**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
UNITED STATES OF AMERICA,          :

                                         :

                                         :              16 Cr. 339 (RMB)

           - against -               :

                                         :             **DECISION & ORDER**

JAMAR DAVIS,                     :

                                         :

                      Defendant.       :
-------------------------------------------------------------x

       Having reviewed the record herein, including without limitation: (**1**) Defendant Jamar Davis's <u>pro se</u> motion, dated November 24, 2020, requesting compassionate release and a reduction of his sentence to time served. <u>Def. Mot.</u> at 1. Davis, who is 25 years old, contends that: (i) he has "chronic asthma [and] also suffer[s] from severe anxiety"; (ii) the number of COVID-19 cases at FCI Beckley in Beaver, West Virginia, where Davis is incarcerated, "has ballooned exponentially"; and (iii) "[a]t home [Davis] would be able to safely engage in productive programs like: Anger Management Victim's Impact, Thinking for a Change, etc. [in order] to continue [his] rehab and transition into a criminal-free lifestyle." <u>Id.</u> at 2-3; and (**2**) the Government's opposition, dated December 8, 2020, contending that: (i) Davis has "no underlying health conditions that place him at higher risk from COVID-19"; (ii) "the COVID-19 virus is relatively contained at FCI Beckley"; and (iii) "the sentencing factors set forth in § 3553(a)—including [Davis's] obvious dangerousness to the community—counsel heavily against immediate release from custody years early." <u>See</u> <u>Gov't Opp.</u> at 1, 8, 11. The Government also submits Davis's BOP medical records which reflect his physical examinations at FCI Beckley between July 2015 and November 2020, **the Court hereby denies Davis's motion for compassionate release, as follows:[1]**

---

**[1] Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

I. **Background**

On February 8, 2017, Davis, who has a history of violent conduct, pleaded guilty to using and carrying a firearm which was discharged during and in relation to a drug-trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii). See Plea Hr'g Tr. at 21:13-17, 26:8-17. Davis's offense involved, among other things, the shooting of an innocent bystander. See PSR ¶ 29; Gov't Opp. at 11. On May 15, 2017, the Court sentenced Davis to 120 months' imprisonment followed by 5 years of supervised release. See Sentencing Tr. at 12:15-25.

As of January 6, 2021, Davis has served approximately 54 months (or 45%) of his full 120-month sentence. See Gov't Opp. at 3. Davis is scheduled to be released on January 20, 2025. See Inmate Database, BOP, https://www.bop.gov/inmateloc/.

On October 5, 2020, Davis submitted to the Warden of FCI Beckley a request for compassionate release. See Def. Mot. Ex. A at 2-4. On October 15, 2020, the Warden of FCI Beckley denied Davis's request. Id. at 1. "The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your [] request is denied at this time." Id.

II. **Legal Standard**

18 U.S.C. § 3582(c)(1)(A) provides in part:

[T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

18 U.S.C. § 3582 "allows a court to reduce a term of imprisonment or supervised release after considering the factors set forth in 18 U.S.C. § 3553(a) and finding that 'extraordinary and compelling reasons warrant such a reduction.'" *See United States v. Turnbull*, 2020 WL 5089439, at *1 (S.D.N.Y. Aug. 28, 2020); *see also United States v. Sturgis*, 2020 WL 7063359, at *3 (W.D.N.Y. Nov. 24, 2020).

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community . . .," and "the reduction is consistent with this policy statement."

"[I]n deciding a compassionate release motion brought directly by a prisoner . . . [t]he court [] looks to § 1B1.13 for guidance in the exercise of its discretion." *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020). However, "a district court's discretion in this area – as in all sentencing matters – is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). District courts are "free[] . . . to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.*

### III.   Findings

1.   Davis, who as noted is 25 years old, has exhausted his administrative remedies. *See United States v. Burman*, 2020 WL 3182766, at *2 (S.D.N.Y. June 13, 2020); *United States v. Gray*, 2020 WL 3050730, at *3 (S.D.N.Y. June 8, 2020).

2.   Davis's BOP medical records suggest that he has relatively mild and infrequent asthma and anxiety, both of which are treated with medication as needed. See pp. 4-6, infra; see also BOP Medical Records Ex. D at 2, 5, 20; BOP Medical Records Ex. E at 5, 6, 12, 16.

3.   As of January 6, 2021, there were 26 active COVID-19 cases at FCI Beckley out of a total inmate population of 1,480. See COVID-19 Cases, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 6, 2021); see also p. 6, infra.

## IV.   Analysis

Neither Davis's medical conditions nor the prison conditions at FCI Beckley at this time constitute extraordinary and compelling circumstances warranting his compassionate release. Moreover, the Court also concludes that Davis poses a danger to the community, and that the 18 U.S.C § 3553(a) sentencing factors weigh against Davis's release.

### (1)   Medical Conditions

Davis has not met his burden of proving that his asthma or his anxiety are serious conditions that are not being treated at FCI Beckley.

#### a.   Asthma

Davis's asthma symptoms appear to manifest approximately once per year. See, e.g., BOP Medical Records Ex. C at 16 (Jan. 1, 2018 record stating: "No asthma exacerbation in a long time (> one year)"); BOP Medical Records Ex. E at 16 (Apr. 17, 2020 record stating: "Inmate has not had recent exacerbations of his asthma"); id. at 5 (Aug. 4, 2020 record stating: "inmate here for follow up on asthma [] . . . no asthma flare ups"). Davis's BOP records indicate that he rarely uses his inhaler. See, e.g., BOP Medical Records Ex. C at 15 (Jan. 1, 2018 record stating: "[Davis] has not used inhaler in over one year. States he does not want to get refills on this."); BOP Medical Records Ex. E at 16 (Apr. 17, 2020 record stating: "inmate [] states he is not using his [inhaler] as prescribed or 'at all'"); id. at 5 (Aug. 4, 2020 record stating: "[Davis] has not used MDI [metered dose inhaler]").

Davis has not shown that his asthma condition presents an increased risk for severe COVID-19 illness. "[T]he Centers for Disease Control and Prevention has designated only '*moderate-to-severe*' asthma cases as presenting an increased risk for severe COVID-19 illness." *United States v. Marquez*, 2020 WL 4016840, at *1 (S.D.N.Y. July 16, 2020) (emphasis added). "Both []moderate asthma and []severe asthma each present with daily symptoms, daily use of short-acting beta agonist [a type of asthma medication that includes inhalers], and some limitation on normal daily activity." *United States v. Allums*, 2020 WL 5796265, at *6 (S.D.N.Y. Sept. 29, 2020).

4

In *United States v. Flores*, 2020 WL 2907549 (S.D.N.Y. June 3, 2020) (Failla, D.J.), the court stated: "The CDC has identified only moderate to severe asthma as a comorbidity that elevates the likelihood of serious illness from COVID-19, and [defendant] has demonstrated neither degree of severity. . . . [defendant] concedes that he 'has not suffered significant symptoms from his asthma lately,' and that the inhaler he was prescribed as an adult remains with his mother." *Id.* at *4. "[Defendant] has not demonstrated the existence of extraordinary and compelling circumstances in his case." *Id.*

    **b.** <u>**Anxiety**</u>

"[T]he CDC does not recognize individuals with anxiety [] as having an increased risk of suffering severe illness from COVID-19." *United States v. Zacarias-Mercado*, 2020 WL 6728932, at *5 (E.D. Cal. Nov. 16, 2020). Moreover, Davis has not shown that FCI Beckley does not provide adequate medical care for him. On the contrary, Davis's BOP medical records indicate that FCI Beckley is monitoring his anxiety and prescribing medication as needed. <u>See, e.g.</u>, <u>BOP Medical Records Ex. E</u> at 12 (June 3, 2020 record stating: "inmate c/o [complains of] increasing anxiety . . . reports he has taken Remeron once before w/ good results," and accordingly "starting [Davis] w/ lower initial dose of Remeron"); <u>id.</u> at 9-10 (July 23, 2020 record stating: "inmate request to have Remeron increased to 15mg. says it works better for anxiety," and accordingly increasing Davis's dosage to "15 mg Orally"); <u>id.</u> at 5 (Aug. 4, 2020 record stating: "[Davis] here for follow up on [anxiety]. no new problems. compliant with/ meds. . . . [Davis] reports recent increase[] in [Remeron] helped."); <u>id.</u> at 2-3 (Sept. 17, 2020 record stating: "inmate reports he is doing well w/ Remeron med but would like to have increased," and accordingly increasing Davis's dosage to "30mg Orally").

In *United States v. Zacarias-Mercado*, 2020 WL 6728932 (E.D. Cal. Nov. 16, 2020), the defendant sought compassionate release based on his anxiety. The court observed that: "the CDC does not recognize individuals with anxiety [] as having an increased risk of suffering severe illness from COVID-19." *Id.* at *5. The court also found that: "the medical records defendant has submitted to the court in support of the pending motion suggest that the [Fresno County Jail] is providing him [with] medical care. Since entering

FCJ, defendant has received regular treatment and attention from clinical physicians." *Id.*; see, e.g., BOP Medical Records Ex. E at 2-3, 5, 9-10, 12 (medical records from June 3, 2020 through September 17, 2020 reflecting BOP doctors' regular monitoring of Davis's anxiety and adjusting of his medication as needed).

**(2)  Conditions at FCI Beckley**

There are currently 26 active COVID-19 cases at FCI Beckley. See COVID-19 Cases, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 6, 2021). This reflects a drop in the number of active COVID-19 cases from one month ago, when FCI Beckley had 154 confirmed active cases among inmates. *See United States v. Petty*, 2020 WL 7047300, at *2 (S.D. Ohio Dec. 1, 2020). As noted, in his letter dated October 15, 2020, the Warden stated: "The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your [] request is denied at this time." See Def. Mot. Ex. A at 1; *see also United States v. Walker*, 2020 WL 7489757, at *3 (S.D.W. Va. Dec. 17, 2020) (where FCI Beckley inmate "express[ed] concerns that COVID-19 [wa]s present in his facility," the court concluded that "a generalized fear of contracting COVID-19 does not, without more, rise to the level of extraordinary and compelling circumstances"); *Petty*, 2020 WL 7047300, at *2-3 (where FCI Beckley inmate "ha[d] only demonstrated that he has a generalized risk of contracting COVID-19," the court held that "the general risk of contracting COVID-19 do[es] not surmount the high bar of 'extraordinary and compelling' set forth in § 3582(c)(1)(A)(i)").

**(3)  Danger to the Community**

The Court finds, reflecting his criminal history, that Davis poses a danger to the community. Such a finding outweighs any other arguments favoring early release, if any. *See* U.S.S.G. § 1B1.13; *see also United States v. Gil*, 2020 WL 2611872, at *2 (S.D.N.Y. May 22, 2020).

The finding of "dangerousness" is based upon several factors:

For one thing, Davis's most recent offense was extremely violent. In furtherance of the conspiracy to distribute crack cocaine, Davis, along with his co-defendant Dashawn Walters, participated in three shootings. See Plea Hr'g Tr. at 16:10-12; Gov't Opp. at 1. During the first of those shootings, Davis aided Walters "in locating another individual, whom Walters then shot in the back of the leg." See Indictment at 1-2. During the second shooting, Davis "opened fire on two other [victims] who were standing directly in front of the entrance to a large apartment building." See Gov't Sentencing Submission at 1; see also Superseding Indictment at 1-2. And, during the third shooting, Davis's shot struck a bystander in the back, causing that individual to "live[] with chronic pain, the bullet still resting inside his body near vital organs." Id.

The Government has argued persuasively: "The several shootings at issue in the instant case demonstrate that this defendant is [a] danger to the community who should serve the entirety of this Court's duly imposed sentence." Gov't Opp. at 12; see Sentencing Tr. at 7:4-9 ("The government states, among other things, that ten years' incarceration accounts for the defendant's repeated acts of violence and for the fact that on multiple occasions, the defendant created grave risk . . ., whether it be [to] a gang-involved target or a mere bystander or passerby[,] [that someone] would be shot dead in the street.").

Recognizing the danger of his conduct, the Court agreed with the Government's assessment at sentencing. "The community that [Davis] was in and the gang activity that was going on in this community was significant. For several months, Mr. Davis was a major part of some acts of violence that put a lot of lives at risk." Sentencing Tr. at 16:4-13. "A ten-year sentence will . . . protect the public from defendant for a meaningful period of time." Id. at 7:12-13.

In *United States v. Ramos*, 2020 WL 3642050 (S.D.N.Y. July 6, 2020), Judge Engelmayer stated: "The Court cannot find that [defendant] 'is not a danger to the safety of any other person or to the community,' as is required for compassionate release. [Defendant's] conduct in this case gravely endangered public safety." *Id.* at *3 (citation omitted); *see also United States v. Seshan*, 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (where "the underlying conduct that led to [defendant's] incarceration

gravely endangered the safety of the community—and directly endangered the life of at least one individual").

Second, Davis's criminal history category of V reflects prior convictions which included: second-degree attempted criminal possession of a weapon under New York State law; first-degree assault—an offense that involved "a violent slashing of a victim's face" under New York State law; and felon in possession of a firearm (a federal crime). See Sentencing Tr. at 4:10-15, 13:21-22; Gov't Opp. at 11; *see also United States v. Moore*, 2020 WL 3428107, at *2 (S.D.N.Y. June 23, 2020) (where defendant "committed numerous serious offenses involving firearms [] and violence[,] . . . the Court finds that Defendant would pose a danger to his community were he to be released"). And, in *United States v. Hernandez*, 2020 WL 6269351 (S.D.N.Y. Oct. 26, 2020), the defendant had been previously convicted of assault in New York Supreme Court for slashing a victim. Judge Nathan concluded that the defendant's criminal history "shows a pattern of dangerous and violent conduct that poses a serious safety risk to the community." *Id.* at *2.

This Court also notes that Davis committed a felon-in-possession-of-a-firearm offense on April 28, 2015, which was only 10 days after his commission of the crime in this case. See PSR ¶¶ 12-14, 30.

Third, at the time that Davis committed the instant crime, he was on parole for the New York State offense of second-degree attempted criminal possession of a weapon. See PSR ¶ 29; Gov't Opp. at 11. In *United States v. Mack*, 460 F. Supp. 3d 411 (S.D.N.Y. 2020), Judge Gardephe stated: "[Defendant's] commission of the instant offense while on parole demonstrate[s] that he is a danger to the community." *Id.* at 417; *see United States v. Sanchez*, 2020 WL 2787654, at *8 (S.D.N.Y. May 29, 2020) ("[Defendant] committed the instant offense while on state parole. . . . This fact is evidence of [defendant's] inability to obey the law, an inability to adhere to any terms of release that might be imposed, and, therefore, that he poses a danger to the public.").

Fourth, while Davis was incarcerated at Rikers Island for one of his prior crimes, "he acted violently [] and fought with others regularly." See PSR ¶ 52; Sentencing Tr. at 4:13-15. In *United States v.*

*Lawrence*, 2020 WL 5253890 (D.D.C. Sept. 3, 2020), Judge Kollar-Kotelly denied compassionate release where the defendant "had a poor disciplinary record during his incarceration [including] . . . incidents involving violent or assaultive conduct." *Id.* at *8; *see also United States v. Rosario*, No. 09-CR-415, at 3 (S.D.N.Y. June 11, 2020) (where defendant had a "violent history and poor record of institutional adjustment, a sentence reduction [wa]s not in order").

### (4) The 18 U.S.C. § 3553(a) Factors Weigh Against Compassionate Release

Davis's compassionate release would be inconsistent with the goals of sentencing, which include the need "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." *See United States v. Harris*, 2020 WL 5801051, at *3 (S.D.N.Y. Sept. 29, 2020); see also Sentencing Tr. at 7:10-14, 14:5-11.

Davis has, as noted, engaged in "repeated acts of violence"—one of which resulted in shooting an innocent bystander. See Sentencing Tr. at 7:4-9. Releasing Davis now would not give sufficient weight to the "seriousness" of his offense. *See United States v. Romero*, 2020 WL 5578272, at *1, *3 (S.D.N.Y. Sept. 16, 2020) (where defendant was convicted of "using, carrying, possessing, brandishing, and discharging firearms in violation of 18 U.S.C. Section 924 (c)(1)(A)" as part of a "violent drug trafficking organization," the court stated: "[r]educing Defendant's sentence would . . . . contravene the sentencing goal of imposing adequate punishment in light of the seriousness of the offense").

Moreover, granting Davis's motion would result in a very substantial reduction of his original sentence. Such a sentence reduction, while perhaps appropriate in other cases, would in this instance undermine respect for the law and would not serve to deter violent crimes. *See United States v. Rosa*, 2020 WL 6075527, at *1, *3 (S.D.N.Y. Oct. 15, 2020) (where defendant was convicted of "using and carrying a firearm in relation to a drug-trafficking crime[,] . . . [the] need to uphold the general and specific deterrence goals of the imposed sentence and provide 'just punishment' all point in favor of denying [defendant's] motion"); *see also United States v. Nieves*, 2020 WL 2476185, at *1, *3 (S.D.N.Y. May 13, 2020) (where

defendant was convicted of "using and carrying firearms in connection with [a] narcotics conspiracy" and "ha[d] served only roughly half of his sentence," releasing the defendant "would not . . . promote respect for the law[,] provide just punishment for the offense or afford adequate deterrence to criminal conduct" (quotation marks and alterations omitted)).

And, a sentence reduction here would not sufficiently protect the public from further crimes of Davis. *See United States v. Lagares*, 2020 WL 4573054, at *1, *2 (S.D.N.Y. Aug. 7, 2020) (where defendant was "convict[ed] for using and carrying a firearm in connection with [a narcotics] conspiracy" in which he "engaged in widespread violence and drug dealing," the court concluded that "releasing defendant [] would not sufficiently protect the public from further crimes").

V.    **Conclusion & Order**

Defendant's motion for compassionate release [Dck. #96] is respectfully denied. The Government's request [Dck. #98] to file Davis's BOP medical records (Exhibits A through E) under seal is granted. *United States v. Daugerdas*, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

Dated:  New York, New York
        January 6, 2021

                              _ *Richard M. Berman* _
                              **RICHARD M. BERMAN, U.S.D.J.**